**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 8:23-cr-451-VMC-UAM**

**ROBERT JACOB TROUT III**

_____/

### Sentencing Memorandum

At age 19, upset that his girlfriend had taken up with another man, Mr. Trout posted a video on Instagram threatening to indiscriminately shoot New York subway riders.  He wasn't really going to do that; his crime was impulsive and immature, coming from his youth and the lack of inhibitions often attendant to social media use.  What he needs is not prison, it is supervision – supervision for as long as possible.  This Court should sentence Mr. Trout to five years' probation.

### Background

Mr. Trout goes by his middle name, Jacob.  Jacob grew up in a loving and relatively stable home, though it was not without challenges.  Jacob's father was addicted to crack cocaine for most Jacob's childhood.  When his addiction became apparent, he lost his job at General Motors.  With these struggles, Jacob's parents separated repeatedly, though they remained married.  Jacob's father underwent a few cycles of rehabilitation and relapse, and ultimately overcame his addiction.  But

when Jacob was about 15, his father's severe multiple sclerosis disabled him.  Before Jacob's arrest, Jacob acted as one of his father's primary caretakers.

Jacob has suffered from attention deficit hyperactivity disorder (ADHD) since childhood.  He was prescribed medication for the condition and attended weekly therapy sessions.  He stopped his prescribed medications, however, and began using marijuana excessively – three times daily from age 13 to his arrest at age 19.  He also used LSD and psychedelic mushrooms excessively, resulting in his hospitalization.  He went to a special high school for a learning disability, but disenrolled at age 18 before graduating.  He held a few entry-level jobs, but wishes to obtain a GED, and would like to become a teacher or guidance counselor.  Jacob has no prior criminal convictions.

Jacob spent most of his childhood living in New York until his family moved to Pinellas Park, Florida.  He had a girlfriend, but learned that she had moved on to someone else who lived in New York.  He reacted by filming a video in which he displayed pistols and threatened to shoot people indiscriminately on the subway – saying he would "walk to Grand Central or some shit . . . ."  He posted the video to his Instagram account on Monday, November 20, 2023.  Importantly, in the video, Mr. Trout specifically says that the shooting will occur on Thursday, November 23, 2023.

2

Someone saw the video and reported it to law enforcement on Wednesday, November 22, 2023.  Police spoke to Mr. Trout's mother, and left a message with her to for Mr. Trout to call the officer.  Then, Mr. Trout filmed a new video of himself and posted it to Instagram.  In the video, he said, "Who the fuck called the cops on me, nigga?  I ain't gonna fucking hurt nobody, bro.  I'm joking bro.  Calm the fuck down.  I'm not retarded."  Then, he posted another video of himself, saying, "I'm going to the fucking gun range, bro.  Calm the fuck down."  The same day, Mr. Trout deactivated his Instagram account.

Mr. Trout returned home on the evening of November 22, 2023.  The police detained him.  They searched his car, finding lower receiver manufacturing kits, i.e., kits to make parts of a gun that could be used to build a complete pistol.  When officers searched Mr. Trout's room, they found other pistol parts.  A later search of Mr. Trout's Instagram account showed a conversation with another user demonstrating that Mr. Trout fancied himself a hobbyist gunsmith:

| | |
|---|---|
| 48654 | I>I BUILD GUNS<br /></td></tr></table><br /><table><tr><th>Author</th><td>live4_r3rok_die4_r3rok (Instagram: |
| 48655 | I>2023-11-20 15:40:11 UTC<br /></td></tr></table> |
| 48656 | I>LEGALLY<br /></td></tr></table><br /><table><tr><th>Author</th><td>live4_r3rok_die4_r3rok (Instagram: 5465 |
| 48657 | I>2023-11-20 15:40:13 UTC<br /></td></tr></table> |
| 48658 | I>AS A HOBBY<br /></td></tr></table><br /><table><tr><th>Author</th><td>live4_r3rok_die4_r3rok (Instagram: 5 |
| 48659 | I>2023-11-20 15:40:24 UTC<br /></td></tr></table> |
| 48660 | I>EVEYRTHING I OWN IS LEGAL<br /></td></tr></table><br /><table><tr><th>Author</th><td>r.t_wand_g (Instagram |
| 48661 | I>2023-11-20 15:40:25 UTC<br /></td></tr></table> |
| 48662 | I>Nice<br /></td></tr></table><br /><table><tr><th>Author</th><td>r.t_wand_g (Instagram: 58165798365)<br /><  |
| 48663 | I>2023-11-20 15:40:52 UTC<br /></td></tr></table> |
| 48664 | I>I need to get me a gun to protect myself @@sadly I can't<br /></td></tr></table><br /><table><tr><th>Aut |
| 48665 | I>2023-11-20 15:42:29 UTC<br /></td></tr></table> |
| 48666 | I>bro wya<br /></td></tr></table><br /><table><tr><th>Author</th><td>r.t_wand_g (Instagram: 58165798365)<br |
| 48667 | I>2023-11-20 15:42:48 UTC<br /></td></tr></table> |
| 48668 | I>NYC bro wym where I'm at<br /></td></tr></table><br /><table><tr><th>Author</th><td>r.t_wand_g (Instagram: |
| 48669 | I>2023-11-20 15:43:03 UTC<br /></td></tr></table> |
| 48670 | I>Don't give a gun @<br /></td></tr></table><br /><table><tr><th>Author</th><td>live4_r3rok_die4_r3rok (Ins |
| 48671 | I>2023-11-20 15:43:25 UTC<br /></td></tr></table> |
| 48672 | I>You sent an attachment.<br /></td></tr></table><br /><table><tr><th>Author</th><td>r.t_wand_g (Instagram: |
| 48673 | I>2023-11-20 15:43:33 UTC<br /></td></tr></table> |
| 48674 | I>If I get caught with one I'll get kicked out the country<br /></td></tr></table><br /><table><tr><th>Autho |
| 48675 | I>2023-11-20 15:43:43 UTC<br /></td></tr></table> |

This conversation occurred on November 20, 2023, the same day Mr. Trout posted the threat on Instagram.

Police also located an empty box of ammunition in Mr. Trout's car and a single spent casing in his room.  Police also found a handwritten note that the PSR describes with no more detail than that was an "address in New York City."  The evidence does not reveal the significance of this address.  Police never located any completed guns, including those depicted in the video.  Mr. Trout gave a rambling and largely incoherent interview with the police that is demonstrative of his untreated ADHD.  He stated that he had thrown the guns off the Gandy Bridge into Tampa Bay (he called the bay the "river").

When the police arrested Mr. Trout, it was the evening of November 22, 2023, in Pinellas Park, Florida.  If Mr. Trout's Instagram threat was to believed, he was to be in New York conducting a mass shooting the next day, on November 23, 2023, Thanksgiving Day.  But there is no evidence that Mr. Trout made any travel arrangements to go to New York.  The drive to New York takes between 17 and 18 hours from Pinellas Park.  Mr. Trout had no completed guns, only gun parts and manufacturing kits.  He had no ammunition, only an empty box and a spent casing.

After Mr. Trout's arrest, Dr. Angel Montfort conducted a psychological evaluation of him.  Dr. Montfort diagnoses Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, Other Specified Personality Disorder, and

4

substance use disorders.  Importantly, Dr. Montfort explains, "These emotions and the corresponding behavior (posting threats via social media) are clinically significant, as evidenced by marked distress that is out of proportion to the severity or intensity of the stressor."  Mr. Trout's conditions cause him to "experience behavioral issues such as acting rebellious, destructive, reckless, or impulsive when faced with stressful situations."  Mr. Trout's symptoms include problems with "impulse control," and "affective instability due to a marked reactivity of mood (his description of when he 'snaps' unreasonably); impulsivity that has been self-damaging (current offense, substance abuse, reckless driving); and inappropriate, intense anger or difficulty controlling anger (recurrent physical fights, frequent displays of temper)."  Dr. Montfort prescribes a regimen of therapy.

**ARGUMENT**

This Court should sentence Mr. Trout to five years' probation to provide supervision and support as long as possible.  The appropriately calculated guidelines range is 0 to 6 months' imprisonment, and probation would better serve the statutory purposes of sentencing than imprisonment.

## I.  The guidelines range is 0 to 6 months' imprisonment.

The PSR makes two errors.  First, it adds the enhancement that applies when the evidence shows that the defendant intended to carry out the threat.  But the evidence falls far short of a preponderance of the evidence that Mr. Trout actually

5

intended to commit this heinous crime.  On the basis of this first error, the PSR additionally errs by failing to apply the reduction for making a single threat with little or no deliberation.  When the "intent to carry out" enhancement is removed and the "little or no deliberation" reduction is included, Mr. Trout has an offense level of 6 and a criminal history category of I, putting him comfortably in Zone A of the sentencing table, and calling for a sentence of probation.

     A.  <u>The "intent to carry out" enhancement is inapplicable.</u>

     The relevant guideline provides, "If the offense involved any conduct evidencing an intent to carry out [the] threat, increase by 6 levels."  U.S.S.G. § 2A6.1(b)(1).  "In determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case as taken as a whole."  *Id.* § 2A6.1 cmt. n.1.  Thus, the court may not consider conduct occurring after the threat was made.  *See United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006).  It is the Government's burden to prove this enhancement.  *See United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013) (citing *United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998)).  The court applies a preponderance-of-the-evidence standard to disputed sentencing factors like this one,

and "the preponderance standard is not toothless." *See United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995).

Evidence of the defendant's mere possession or attempted possession of the weapons needed to carry out the threat is insufficient to apply the enhancement. *See United States v. Philibert*, 947 F.2d 1467, 1471 (11th Cir. 1991). In *Philibert*, the defendant, who believed in a vast conspiracy between the FBI and the Mafia, purchased over $4,000 worth of guns, bayonets, and ammunition, including a Thompson submachine gun. *Id.* at 1468. He never received the Thompson, but he stored the remaining weapons in his mobile home and at his mother's house. *Id.* Then, 53 days later, he called his former employer's home and, speaking to the employer's teenage daughter, said that he was coming to kill the employer. *Id.* at 1468-69. The district court applied the "intent to carry out" enhancement, but the Eleventh Circuit reversed. *Id.* at 1471. The Eleventh Circuit explained, "As we view the record, there was no evidence to suggest any connection whatever between appellant's acquisition of firearms in June and any effort to carry out the threat made against Mr. Steineke on August 11th." *Id.*

Further, evidence of the defendant's mere possession of the threat victim's address is likewise insufficient to apply the enhancement. *See United States v. Sovie*, 122 F.3d 122, 129 (2d Cir. 1997). In *Sovie*, the defendant had a long history of

7

abusing his girlfriend, who moved away and attempted hide from him. *Id*. at 124. The defendant then threatened his girlfriend and her son by phone. *Id*. The district court applied the "intent to carry out" enhancement on the basis of (1) the defendant's attempting to meet the victim at a bus station and (2) the defendant's obtaining the victim's address and phone number despite her attempts to hide from him. *Id*. at 129. After concluding the that the bus-stop-meeting evidence was insufficient to support the enhancement, the Second Circuit turned to the defendant's possession of the victim's address and phone number:

> Possession of those items may be relevant to such an intent but by itself is not sufficient to prove it. Although in possession of that information, Sovie did not use it to proceed to Dominie's house immediately or soon after the May 5 conversations. Rather, he traveled to Watertown only when Dominie asked him to meet her. There is no additional information in the record regarding Sovie's possession or use of the address and phone number probative of his intent to carry out the May 5 threats.

*Id*. The court vacated the sentence and remanded for resentencing. *Id*.

Here, the evidence falls far short of the preponderance standard needed to support the "intent to carry out" enhancement. The PSR relies on three categories of evidence in applying the enhancement (1) evidence inherent in the threat, like the threat's specificity and Mr. Trout's apparent intent to alarm the public; (2) evidence of Mr. Trout's possession of firearms, firearm parts, firearm manufacturing equipment, and ammunition; and (3) evidence of Mr. Trout's familiarity with New

8

York City and possession of a note with an unspecified New York address on it.

None of this evidence, in isolation or together, supports the proposition that Mr. Trout actually intended to carry out the heinous crime he threatened on his Instagram account.  First, evidence inherent to the threat has nothing to do with Mr. Trout's intent to carry out the threat.  That the threat was detailed, specific, and serious is concerning indeed.  But the Guidelines do not call on the Court to decide whether the threat was intended to alarm; they call on the Court to decide *whether Mr. Trout was actually going to travel to New York to commit a mass shooting on the subway.*  The evidence falls far short of making that showing by a more-than-50% preponderance.  By focusing on the detail, specificity, and seriousness of the threat, the probation officer conflates Mr. Trout's intent to cause alarm with an intent to actually carry out the threat.  One may intend and effect a great deal of alarm by making a threat, but at the same time have no intent whatsoever to carry out that threat, such as one who intentionally but falsely causes a bomb scare.  The evidence inherent to the threat on which the probation officer relies is not even relevant in considering the enhancement.

Second, Mr. Trout's mere possession of firearms, empty boxes of ammunition and a spent casing, and the means to make more firearms, does not support the enhancement.  In *Philibert*, the defendant, operating under the delusion that the FBI and Mafia were in cahoots, obtained a small arsenal of weapons and attempted to

obtain a Thompson submachine gun, less than two months before making a telephone threat to kill his employer.  The court held that this evidence was insufficient to support the enhancement.  Here, the evidence is even less persuasive than the insufficient evidence in *Philibert*.  The video evidence indicates that, at least while filming the threatening video, Mr. Trout had possession of the guns and ammunition depicted in the video.  But *Philibert* demonstrates that the mere possession of weapons capable of being used to carry out the threat is insufficient to prove the actual *intent* to carry out the threat.  The virtual arsenal the defendant sought to marshal in *Philibert* was far more probative that the three guns Mr. Trout had, and yet was still insufficient.  And Mr. Trout's possession of lower receiver manufacturing kits, gun parts, empty ammunition boxes, and a spent casing is close to meaningless.  It defies credulity to say that Mr. Trout, having not yet manufactured a gun when he made the threat on November 20 or when he was arrested on November 22, would have begun and finished manufacturing one, obtained new ammunition, and traveled the 18 hours to New York to consummate the crime he had threatened to commit on November 23.  On top of this, the same day that Mr. Trout posted the threatening video he explained to the other Instagram user that he is a hobbyist gunsmith.  At least, that is, he fancies himself one – there is no evidence that Mr. Trout ever successfully made a firearm.

Third, evidence that Mr. Trout once lived in New York and had a piece of

paper with some unspecified New York address on it does not work toward the Government meeting its burden of proving that Mr. Trout in fact intended to carry out his threat to shoot people indiscriminately in the subway.  In *Stovie*, the defendant had a long history of abusing the victim and obtained her address and phone number despite her efforts to conceal that information from him.  That evidence was insufficient in itself to prove the enhancement.  Here, the evidence is weaker still.  That Mr. Trout once lived in New York and so has a generalized familiarity with the city does little to show that he actually intended to travel there on November 23, 2023, to shoot people in the subway.  There is no evidence establishing what physical location the address on the paper in the car represents.  All that can be said is that it is an address in New York City, the largest city in America.  The evidence does not show if the address represents Mr. Trout's grandmother's home, his favorite pizza spot, or, for that matter, Grand Central Station.  If the evidence in *Stovie* that the defendant had his ex-girlfriend's address against her will was insufficient, the evidence here is not even close.

Lastly, the totality of the circumstances demonstrates that the Government cannot prove by a preponderance that Mr. Trout actually intended to carry out the remarkable crime he threatened.  Mr. Trout posted his threatening video on social media while in Florida.  He did so on November 20, threatening to commit the crime on November 23.  There is no evidence that he made any travel arrangements for

11

New York, which is an 18-hour drive from his home.  By the time he was arrested it was the evening of November 22, and he had not left for New York.  He had retracted the threat in two follow-up Instagram videos and deactivated his account, and no longer had the guns or ammunition depicted in the video, the police having searched his car and home for them.  As alarming as his threat was, the evidence falls far short of showing that Mr. Trout in fact intended to carry it out, so the enhancement does not apply.

    B.  <u>The "little or no deliberation" reduction is applicable.</u>

The Guidelines provide, "If (A) subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels."  U.S.S.G. § 2A6.1(b)(6).  Unlike the "intent to carry out" enhancement, there is no limitation to the court's consideration of conduct occurring during or before the offense for the "little or no deliberation" reduction under subsection (b)(6).  *See id.* § 2A6.1 cmt. n.1 (providing the temporal limitation only for subsections (b)(1), (b)(2), and (b)(3)).  That is, the court may consider all the circumstances, including evidence arising after the defendant made the threat.

Here, each element of the reduction is present.  All agree that subsection (a)(2) does not apply; the base offense level is set by subsection (a)(1).  PSR ¶ 17.  No one suggests that subsections (b)(2), (3), (4), or (5) apply.  The PSR applies subsection

(b)(1), but that is in error for the reasons explained at length above.  Indisputably, the offense involves "a single instance."

Finally, Mr. Trout's offense evidenced "little or no deliberation."  Upset by his girlfriend's moving on to another man, Mr. Trout posted a threatening video to social media, where young people like himself seem to all-too-frequently think their words have little meaning.  There is no evidence that Mr. Trout spent any time deliberating over this impulsive and hasty Instagram post.  What's more, Dr. Montfort's evaluation indicates that Mr. Trout's impulsive and outsized reaction is consistent with his newly diagnosed mental health disorders, which are characterized by "marked distress that is out of proportion to the severity or intensity of the stressor"; "acting rebellious, destructive, reckless, or impulsive when faced with stressful situations"; "impulse control"; and "affective instability due to a marked reactivity of mood . . . ; impulsivity that has been self-damaging . . .; and inappropriate, intense anger or difficulty controlling anger . . . ."

Mr. Trout's offense is more akin to a temper tantrum, borne of his untreated mental illness, than a well-thought-out plan to threaten.  His offense evidences "little or no deliberation," so the 4-level reduction applies.

## II.  Probation best serves the purposes of sentencing.

Because Mr. Trout's appropriately calculated guidelines range is 0 to 6 months' imprisonment, and because his offense level of 6 and criminal history

13

category of I are located within Zone A of the sentencing table, the Guidelines call for a sentence of probation.  The guidelines range is the court's "starting point and initial benchmark" at sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  What's more, the 18 U.S.C. § 3553(a)(2) factors support a guidelines sentence of probation.  Mr. Trout committed a serious but impulsive crime.  This is his first offense, and he is now a felon.  He has been detained pretrial and will suffer the collateral consequences of being a felon, sufficient to send a strong message that even what one says and does on social media matters.  He is only twenty years old, and so has plenty of time to mature and learn from his mistake.  Probation could assist him in obtaining a GED.

Any lingering concern that Mr. Trout is in fact a danger with firearms is mitigated by his felony conviction, which prohibits him from obtaining or possessing firearms.  That prohibition can be reinforced by a condition of probation prohibiting firearms possession, which can itself be enforced with a search condition.  Mr. Trout's offense was influenced by his heretofore undiagnosed and untreated mental health problems.  Dr. Montfort opines that he would benefit from therapy.  He wishes to attend therapy, and probation can require and facilitate his obtaining the necessary therapy.  He has self-medicated and abused illegal drugs in the past, and probation can provide him with the rehabilitation services he needs to avoid drug use, as well as testing to monitor his compliance.  If the Court imposes any period of

14

imprisonment, Mr. Trout is only subject to three years' supervised release, but may be subject to five years' probation.  PSR ¶¶ 61, 63.  To impose the longest possible term of supervision, this Court should sentence Mr. Trout to probation.

DATED this 3rd day of June 2024.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

/s *Samuel E. Landes*
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone:   (813) 228-2715
Facsimile:    (813) 228-2562
Email:  Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd of June 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Brooke Padgett.

/s *Samuel E. Landes*
Samuel E. Landes, Esq.
Assistant Federal Defender

15



# Case Report
## Summary



**Print Date/Time:** 11/27/2023 06:13
**Login ID:** huffzj
**Case Number:** 2023-00071129

Pinellas Park Police Department
**ORI Number:** FL0521100

## Case

| | | | |
|---|---|---|---|
| **Case Number:** | 2023-00071129 | **Incident Type:** | Assist Other Agency |
| **Location:** | 3205 GRAND AVE 107 | **Occurred From:** | 11/22/2023 08:00 |
| | PINELLAS PARK, FL 33782 | **Occurred Thru:** | 11/22/2023 22:00 |
| **Reporting Officer ID:** | 12218 - Haisch | **Disposition:** | Arrest Made |
| | | **Disposition Date:** | 11/22/2023 |
| | | **Reported Date:** | 11/22/2023 13:08 Wednesday |

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 5200 | 836.10 | Written threats to kill or do bodily injury | 1 |
| 2 | State | 25 | 934.215 | Unlawful use of a two-way communications device | 1 |

## Subjects

| Type | No. Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|
| Other | 1 TROUT, NATALIE VANESSA | | (347)901-2050 | White | Female | |
| | | PINELLAS PARK, FL 33782 | | | | 54 |
| Other | 2 TROUT, ROBERT JACOB J, | | | Black | Male | |
| | | PINELLAS PARK, FL 33782 | | | | 61 |
| Other | 3 JOHNSON, QUONTESHA LASHAY | | (305)766-6080 | Black | Female | |
| | | LAKE WALES, FL 33898 | | | | 36 |
| Other | 4 JOHNSON, RODOLFO ENRIQUE | 2641 SUNSET CIR | (347)944-2600 | Black | Male | |
| | | LAKE WALES, FL 33898 | | | | 36 |
| Suspect | 1 TROUT, ROBERT JACOB, III | | (646)703-4160 | Black | Male | |
| | | ST PETERSBURG, FL 33702 | | | | 19 |

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|
| 26050 A | TROUT, ROBERT JACOB, III | PINELLAS PARK, FL 33782 | 11/22/2023 19:51 | Investigation | 19 |

## Property

| Date | Code | Type | Make | Model | Description | Tag No. Item No. |
|---|---|---|---|---|---|---|
| 11/22/2023 | Evidence | Photograph | | | Photographs of Instagram account | 166311 1 |
| 11/22/2023 | Evidence | Video Disk | | | Video of threats made to shoot up a train | 166310 1 |
| 11/22/2023 | Evidence | Cell Phone | APPLE | Iphone | apple iphone | |
| 11/22/2023 | Informational Only | Document | | | 2 pictures and one video uploaded to evidence.com for social media | 166309 1 |

## Vehicles

| No. Role | Vehicle Type | Year Make | Model | Color | License Plate State |
|---|---|---|---|---|---|
| | | | | | |

Page: 1 of 19

DISC-00001



# Case Report

## Summary



**Print Date/Time:** 11/27/2023 06:13
**Login ID:** huffzj
**Case Number:** 2023-00071129

Pinellas Park Police Department
**ORI Number:** FL0521100

DISC-00002

## Case Report, Officer: haischjw, Supervisor: FeyBR, Merged By: huffzj



**PINELLAS PARK POLICE DEPARTMENT**
**CASE REPORT**
7700 59th ST N
Pinellas Park, FL 33781

CASE# **2023-00071129**

| | | | |
|---|---|---|---|
| **EVENT** | REPORTED DATE/TIME<br>11/22/2023　13:08 | OCCURRED INCIDENT TYPE<br>**Assist Other Agency** | CASE STATUS AT TIME OF REPORT<br>**Closed** |
| | OCCURRED FROM DATE/TIME<br>11/22/2023　08:00 | OCCURRED TO DATE/TIME<br>11/22/2023　22:00　LOCATION OF OCCURRENCE<br>**3205 GRAND AVE 107 PINELLAS PARK,** | |

| | DESCRIPTION | STATUTE ID | ATTEMPT/COMMIT |
|---|---|---|---|
| **OFFENSES** | Written threats to kill or do bodily injury | 836.10 | **Committed** |
| | Unlawful use of a two-way communications device | 934.215 | **Committed** |
| | | | |
| | | | |
| | | | |

**SUBJECT**

| SUBJECT TYPE<br>**Suspect** | | | NAME (LAST, FIRST, MIDDLE)<br>**TROUT, ROBERT JACOB** | | | | | PRIMARY PHONE<br>**(954)629-6927** |
|---|---|---|---|---|---|---|---|---|
| ADDRESS<br>　　　　　Pinellas Park, FL 33781 | | | | | | | | PHONE #2 |
| DOB | AGE<br>19 | SEX<br>M | RACE<br>Oth | HEIGHT or RANGE<br>57 | WEIGHT or RANGE<br>110 | EYES<br>BLK | HAIR<br>BLD | RESIDENT STATUS<br>**Full-time** |
| DL NUMBER/STATE<br>　　　FL | | | SSN | | ALIAS (LAST, FIRST, MIDDLE) | | | |
| EMPLOYER NAME AND ADDRESS | | | | | | | | |

| SUBJECT TYPE<br>**Other** | | | NAME (LAST, FIRST, MIDDLE)<br>**TROUT, NATALIE VANESSA** | | | | | PRIMARY PHONE<br>**(347)901-2050** |
|---|---|---|---|---|---|---|---|---|
| ADDRESS<br>　　　　　PINELLAS PARK, FL 33782 | | | | | | | | PHONE #2 |
| DOB | AGE<br>54 | SEX<br>F | RACE<br>Whi | HEIGHT or RANGE<br>52 | WEIGHT or RANGE<br>150 | EYES<br>BRO | HAIR<br>BRO | RESIDENT STATUS<br>**Full-time** |
| DL NUMBER/STATE<br>　　　FL | | | SSN<br>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 | | ALIAS (LAST, FIRST, MIDDLE) | | | |
| EMPLOYER NAME AND ADDRESS | | | | | | | | |

| SUBJECT TYPE<br>**Other** | | | NAME (LAST, FIRST, MIDDLE)<br>**TROUT**　　　**J, ROBERT JACOB** | | | | | PRIMARY PHONE |
|---|---|---|---|---|---|---|---|---|
| ADDRESS<br>　　　　　Pinellas Park, FL 33781 | | | | | | | | PHONE #2 |
| DOB | AGE<br>61 | SEX<br>M | RACE<br>Bla | HEIGHT or RANGE<br>61 | WEIGHT or RANGE | EYES<br>BLK | HAIR<br>BLD | RESIDENT STATUS<br>**Full-time** |
| DL NUMBER/STATE<br>　　　FL | | | SSN | | ALIAS (LAST, FIRST, MIDDLE) | | | |
| EMPLOYER NAME AND ADDRESS | | | | | | | | |

| REPORTING OFFICER<br>**Haisch, Jesse** | DATE<br>**11/22/2023** | REVIEWED BY |
|---|---|---|



## PINELLAS PARK POLICE DEPARTMENT
### CASE REPORT
**7700 59th ST N**
**Pinellas Park, FL 33781**

CASE # **2023-00071129**

---

## PROPERTY

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | Informational Only | | | Document | |
| | QUANTITY/UNIT OF MEASURE<br>3      Each | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION<br>2 pictures and one video uploaded to evidence.com | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | Evidence | APPLE | Iphone | Cell Phone | |
| | QUANTITY/UNIT OF MEASURE<br>1      Each | SERIAL | OAN | COLOR<br>Pur | VALUE<br>$1,000.00 |
| | ADDITIONAL DESCRIPTIVE INFORMATION<br>apple iphone | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **GENERAL** | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP.<br>PLATE TYPE | PLATE #<br>PLATE STATE | |

| | FIREARM PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **FIREARM** | | | | | |
| | FINISH | SERIAL | GUN TYPE I<br>GUN TYPE II | CALIBER | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | | |

| | FIREARM PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| **FIREARM** | | | | | |
| | FINISH | SERIAL | GUN TYPE I<br>GUN TYPE II | CALIBER | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Haisch, Jesse | 11/22/2023 | |

# PINELLAS PARK POLICE DEPARTMENT
## CASE REPORT
**7700 59th ST N**
**Pinellas Park, FL 33781**

CASE #**2023-00071129**

---

### NARRATIVE

---

**Title:** Threats of Mass Shooting

**Date of Report:** 11/22/23

**Investigating Officer:** Sergeant Haisch

**Scene Description:** 3205 Grand Ave N. unit 107

**Narrative:**

Background: On 11/22/23, I was contacted by Major Turner from the Pinellas Park Police Department. This was regarding a situational threat assessment involving firearms. On November 22, 2023 I received an intelligence tip and video from Major Turner. Major Turner is aware that I have assisted SPPD, CWPD, PCSO, ATF, HOME Team Task Force and Pinellas Park Police Department with firearms-related cases by identifying firearms from video, picture, or actual physical firearms. These cases range from felon/delinquent in possession of a firearm to homicide. This process includes research on whether or not there are in existence any replicas, toys, fakes, airsoft's, of this firearm. .

Narrative: On 11/22/23, I was contacted by Major Turner from the Pinellas Park Police Department. I later received an intelligence tip and video from Major Turner. I contacted Tampa Bay FBI due to the allegation of such a severe threat and was informed the bureau was actively looking for assistance in the matter. This tip was derived from Miami FBI and began being forwarded to local agencies within Pinellas County, Fl; to include Largo PD, Pinellas Park PD, Pinellas County Sheriffs Office, and the FBI.

I observed a video of what appeared to be a male subject with multiple firearms. Two firearms were identified as Glock semi-automatic pistols in .40 caliber. The "40" caliber engravings can be observed on one of the pistol slides. Both Glock pistols were shown in different angles, one clip of the media shows one of the Glocks loaded with a factory style magazine alongside an extended magazine (30 rounds). In the exposed 30 round magazine a silver round of ammunition is observed. In another portion of the clip both Glock pistols are loaded with the extended magazines.

The firearms were identified as a Glock 40 calibers with Polymer 80 lower receivers. I observed a video clip of a subject with a pistol waving them and handling them in a reckless manner. This was concluded due to the following identifiers:

*The visible engraving "40" on the front of the slide.

*The visible magazine release (which changes from generation 3 to generation 4).

*The visible slide stop lever.

*The visible textured grip to the mid-section of the rear of the grips.

*Several other distinct features are visible which include the distinctive Glock trigger/safety, serrations cut into the slide for a combat style grip to charge the pistol, slide lock, built in attachment rail to the

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **Haisch, Jesse** | **11/22/2023** | |

DISC-00005



## PINELLAS PARK POLICE DEPARTMENT
### CASE REPORT
**7700 59th ST N**
**Pinellas Park, FL 33781**

CASE # **2023-00071129**

---

### NARRATIVE CONTINUATION

---

underside of the front of the rail and other parts.

*Recovered packaging and modeling units for "Polymer80" lower receiver build kits along with an empty box of .40 caliber ammunition.

During the video the subject identified as Robert Trout III can be heard making extensive, sever, and specific threats; to include "I'm gonna shoot anybody I see on that fuckin train'", "if you're from New York City do not take the train on Thursday evening". He goes on to state that he has sixty rounds of ammunition for sixty people. This is all while showing off the two extended 30 round magazines and handling the Glock firearms.

A source kept confidential at this time notified Miami FBI of the Instagram account @live4_r3rok_die4_r3rok. The FBI had already conducted a preservation on the account which was later discovered to be removed by the user on 11/22/23. The account was registered to a "Roberto" which yielded many posts/pictures/media of Trout III. When cross checked in Google under the Instagram user name @live4_r3rok_die4_r3rok, I located several promotional mixed martial arts fights in the Florida region within 2023. Within these promotional 3rd party posts Trout III is listed by Roberto Trout along with his Instagram handle @live4_r3rok_die4_r3rok and his photograph. It should be noted that Trout III has a distinct nose feature which appears to be previously broken/scared possibly from MMA.

I was informed that Largo, PD made contact with the MMA gym located at 13584 49th St N. I was informed that the gym manager informed Largo PD that they were in fact aware of Trout III having mental illness issues.

Officer Rebels, Lt. Ryan, Detective Shortt, Detective Gavin, and I responded to 3205 Grand Ave N. unit 107. This address is the address of Trout III, his mother Natalie Trout, and his father Robert Trout Jr. Natalie stated Trout III was not home at the time but he had been home earlier. She stated he was going through a tough phase and continually getting into trouble, she was adamant there were no firearms in the residence. She informed me that Trout III was using a vehicle registered to her which was identified as a white Nissan bearing Fl tag 29DNAZ. Natalie stated she did not know where Trout III was but provided his phone number of 954-629-6927.

Natalie was shown the described video of Trout III with the firearms. She acknowledged that the voice and male did appear to be her son Trout III. She informed me that the family came from New York and that she was recently back from New York. She stated they were looking to move back. She stated she did not know where the video was taken, however he was home at the residence prior to the posting. (Flock license plate readers confirmed this that he was leaving the Gandy area after the complaint was received). I provided Natalie with my work number and informed her I was interested in speaking with her son.

I informed Special Agent Daniel Nowak of the situation and findings. It was determined that with the accessibility to the firearms, travel means, and mental state; Trout III was a credible threat to society. When checked Trout III had multiple arrest to include firearms violations. I then contacted PCSO

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **Haisch, Jesse** | **11/22/2023** | |



## PINELLAS PARK POLICE DEPARTMENT
CASE REPORT

7700 59th ST N
Pinellas Park, FL 33781

CASE # **2023-00071129**

---

### NARRATIVE CONTINUATION

Threat Management Group of the situation and BOLO'D a county way situational attempt to locate on Trout III. Trout III then contacted PPPD dispatch and was transferred to my mobile work phone, during this time SIU detectives remained at the residence for surveillance. Trout III explained he was not home and that he was concerned why police were speaking to his mother. I explained the situation briefly and requested him to speak in person. Several minutes later Trout III drove home and was detained by SIU detectives. During this time, he was found in possession of a purple iPhone, this phone did ring to the listed phone number.

I then met with Trout III who was informed of the detention and he agreed to speak with myself at the PPPD. Natalie gave consent to search the listed Nissan vehicle (see Detective Shortt's supplement). During this search the listed Polymer80 lower receiver manufacturing kits along with the empty box of 40 caliber ammunition were located. An address to New York City, New York was located in hand writing as well.

I notified FBI S.A. Nowak of the arrest and he stated he would speak with Trout III along with myself at PPPD. Officer Simpkins transported Trout III to the PPPD without issue or any valuable statement.

Lt. Ryan, Detective Macrina, and Detective Gavin were given consent by Natalie to search the residence and Trout III's bedroom. She explained that he was that of a child and took care of everything for him, she stated she was constantly in his room to help him and pick up. Trout III did say if he could come back to PPPD and speak with myself he didn't mind if his room was searched. Several Glock pieces and a fired round of ammunition were located in Trout III's bedroom.

I met with FBI S.A. Nowak who was informed of the current findings. I then met with Trout III and read him his Miranda Warnings from my SAO issued card. He stated he agreed to speak with myself and S.A. Nowak. During this interview Trout III changed his story multiple times and went from one tempo to another, appearing to be in a manic manner. Trout III said he did have a phone found on him that he used but it was his mother's. He stated he was at home earlier in the day on 11/22/23 but said he then went to work. He could not recall times. He could not recall when he moved to Florida, what high schools he went to, how long he had been conducting MMA or boxing.

Trout III appeared to holding back during the conversation and would begin to make a statement and then stop and change the subject or then deny the statement he said in the first place. He did agree that he messed up and that he was having a hard time because of mental health issues. However, he would not be specific, he stated he was sad but then would ask about being Baker Acted. He stated he did not take medication and had never been diagnosed with mental health issues.

During the conversation I asked Trout III if he had an Instagram account and he said no, he was hesitant to state he never had one just currently at the time he didn't; which was true as it had been removed. He stated he would not have made any threats and that people make threats. He then agreed that he had pistols but they were his fathers and that they were Glock style and "cowboy" style like the revolver seen. Trout III then changed his story and said that they were airsoft and he melted them. He then stated we wouldn't find the pistols because he threw them in the "river", I asked where

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Haisch, Jesse | 11/22/2023 | |

DISC-00007



**PINELLAS PARK POLICE DEPARTMENT**
CASE REPORT

7700 59th ST N
Pinellas Park, FL 33781

CASE # **2023-00071129**

---

### NARRATIVE CONTINUATION

and he said off of "Gandy". This would be a reference to Gandy bridge that joins Tampa to Saint Petersburg.

After making the Gandy bridge statement he asked how I could verify this and I explained license plate reading capabilities along with PCSO/SPPD Dive teams for recovery. He made several statements about how he lied, then was adamant they were at his residence and they were again his fathers.

S.A. Nowak played the video for Trout III without Trout III seeing the screen, Trout III listed the types of firearms in the video after listening to the video.

I asked Trout III why he had the Polymer80 lowers and he stated he's not a felon and explained they were not his, I asked why he would have the drill/router tool in his bedroom and he said it was not his. Trout III would change his tempo from not having any issue with possession of a firearm due to his belief of not being a felon, to denial stand point and denying any possession.

Trout III did not consent to a search of his Apple iPhone and easily answered that he did not have an Instagram if we looked, he was hesitant when I stated I wanted to look for pictures of firearms. This phone was secured in the Digital Forensics Evidence Locker.

Trout III was ultimately arrested for making threats of a mass shooting along with unlawful use of a two-way device. S.A. advised the FBI was filing a complaint on Trout III for a federal arrest. Vipar affidavits were completed on these. Officer Hernandez completed a BA-52 along with an RPO on Trout III. (See Ofc. Hernandez supplement report for further). Trout III was transported to PCJ by County Transport.

Pictures of the Google search of the Instagram user name and the video of the threats were uploaded to evidence.com. Detective Shortt submitted multiple items of evidence located from the vehicle and the residence (See supplement).

As of 11/23/23 no firearms were located.

This case remains closed with arrest.

A felony invest has been set for 12/7/23 at PCSO SAB at 1530 hours.

Forward a copy of this report to FBI Tampa Bay S.A. Daniel Nowak and PCSO Threat Management.

NFI.

---

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **Haisch, Jesse** | **11/22/2023** | |

**Case Supplement Report, Officer: hernandezj, Supervisor: osgoodtr, Merged By:  huffzj**

## PINELLAS PARK POLICE DEPARTMENT
### CASE SUPPLEMENT REPORT
**7700 59th ST N**
**Pinellas Park, FL 33781**

CASE# **2023-00071129**

### EVENT

| REPORTED DATE/TIME | OCCURRED INCIDENT TYPE | | CASE STATUS AT TIME OF REPORT |
|---|---|---|---|
| 11/22/2023    13:08 | | | |

| OCCURRED FROM DATE/TIME | OCCURRED TO DATE/TIME | LOCATION OF OCCURRENCE |
|---|---|---|
| | | **3205 GRAND AVE PINELLAS PARK,** |

### OFFENSES

| DESCRIPTION | STATUTE ID | ATTEMPT/COMMIT |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

### SUBJECT

| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE) | PRIMARY PHONE |
|---|---|---|
| ADDRESS | | PHONE #2 |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| DL NUMBER/STATE | SSN | ALIAS (LAST, FIRST, MIDDLE) |
|---|---|---|
| EMPLOYER NAME AND ADDRESS | | |

### SUBJECT

| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE) | PRIMARY PHONE |
|---|---|---|
| ADDRESS | | PHONE #2 |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| DL NUMBER/STATE | SSN | ALIAS (LAST, FIRST, MIDDLE) |
|---|---|---|
| EMPLOYER NAME AND ADDRESS | | |

### SUBJECT

| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE) | PRIMARY PHONE |
|---|---|---|
| ADDRESS | | PHONE #2 |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| DL NUMBER/STATE | SSN | ALIAS (LAST, FIRST, MIDDLE) |
|---|---|---|
| EMPLOYER NAME AND ADDRESS | | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **Hernandez, Jonathan** | **11/22/2023** | |

Case Supplement Report 2023-00071129 Page 1 OF 3

DISC-00009



# PINELLAS PARK POLICE DEPARTMENT
## CASE SUPPLEMENT REPORT
**7700 59th ST N**
**Pinellas Park, FL 33781**

CASE # **2023-00071129**

## PROPERTY

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | **Evidence** | | | **Video Disk** | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | **1      Each** | | | | |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | **Evidence** | | | **Photograph** | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | **2      Each** | | | | |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| GENERAL | PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | | | | | |
| | QUANTITY/UNIT OF MEASURE | SERIAL | OAN | COLOR | VALUE |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | PLATE EXP. | PLATE # | |
| | | | PLATE TYPE | PLATE STATE | |

| FIREARM | FIREARM PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | FINISH | SERIAL | GUN TYPE I | CALIBER | VALUE |
| | | | GUN TYPE II | | |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | | |

| FIREARM | FIREARM PROPERTY CODE | MAKE | MODEL | PROPERTY TYPE | |
|---|---|---|---|---|---|
| | FINISH | SERIAL | GUN TYPE I | CALIBER | VALUE |
| | | | GUN TYPE II | | |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **Hernandez, Jonathan** | **11/22/2023** | |



# PINELLAS PARK POLICE DEPARTMENT
### CASE SUPPLEMENT REPORT
7700 59th ST N
Pinellas Park, FL 33781

CASE # **2023-00071129**

## NARRATIVE

************************SUPPLEMENT***********************

ORIGINAL REPORT TYPE/ Weapons offense

ORGINAL REPORT OFFICER/ SGT. Haisch #172

REPORT DATE/ 11-22-23

SUPPLEMENT OFFICER/ Officer J. Hernandez #609

SUPPLEMENT DATE/ 11-22-23

 On 11-22-23 at approximately 2052 hrs, I was dispatched to the police station to assist officers on the weapons offense case. I completed the RPO forms on the suspect, Robert Trout, due to a video threat he made on social media to shoot up Grand Central Station in New York and Trout having ties to NYC as a former resident. The video showed two Glock pistols and a revolver and a male's voice could be heard in the background making the threats to shoot up a subway train. Trout was charged with the appropriate crimes (see Sgt. Haisch's report for further) and a BA52 form was completed on Trout for the threats made. The video and Instagram posts were uploaded to evidence.com. Trout was transported to the county jail by PTU.

BWC/NFI

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Hernandez, Jonathan | 11/22/2023 | |

DISC-00011

Case Supplement Report, Officer: hernandezj, Supervisor: haischjw, Merged By: huffzj

## PINELLAS PARK POLICE DEPARTMENT
### CASE SUPPLEMENT REPORT
7700 59th ST N
Pinellas Park, FL 33781

CASE# **2023-00071129**

**EVENT**

| REPORTED DATE/TIME | OCCURRED INCIDENT TYPE | | CASE STATUS AT TIME OF REPORT |
|---|---|---|---|
| 11/22/2023      13:08 | | | |

| OCCURRED FROM DATE/TIME | OCCURRED TO DATE/TIME | LOCATION OF OCCURRENCE | |
|---|---|---|---|
| | | 3205 GRAND AVE PINELLAS PARK, | |

**OFFENSES**

| DESCRIPTION | STATUTE ID | ATTEMPT/COMMIT |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**SUBJECT**

| SUBJECT TYPE | | | | NAME (LAST, FIRST, MIDDLE) | | | | PRIMARY PHONE |
|---|---|---|---|---|---|---|---|---|
| Other | | | | JOHNSON, QUONTESHA LASHAY | | | | (305 |

| ADDRESS | | | | | | | | PHONE #2 |
|---|---|---|---|---|---|---|---|---|
| 2641 SUNSET CIR LAKE WALES, FL 33898 | | | | | | | | |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | 36 | F | Bla | 55 | | BRO | BLK | Resident |

| DL NUMBER/STATE | | SSN | ALIAS (LAST, FIRST, MIDDLE) | |
|---|---|---|---|---|
| | FL | | | |

| EMPLOYER NAME AND ADDRESS |
|---|
| |

**SUBJECT**

| SUBJECT TYPE | | | | NAME (LAST, FIRST, MIDDLE) | | | | PRIMARY PHONE |
|---|---|---|---|---|---|---|---|---|
| Other | | | | JOHNSON, RODOLFO ENRIQUE | | | | (347 |

| ADDRESS | | | | | | | | PHONE #2 |
|---|---|---|---|---|---|---|---|---|
| 2641 Sunset  CIR LAKE WALES, FL 33898 | | | | | | | | |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | 36 | M | Bla | 62 | | BRO | BLD | Resident |

| DL NUMBER/STATE | SSN | ALIAS (LAST, FIRST, MIDDLE) | |
|---|---|---|---|
| | | | |

| EMPLOYER NAME AND ADDRESS |
|---|
| |

**SUBJECT**

| SUBJECT TYPE | | | | NAME (LAST, FIRST, MIDDLE) | | | | PRIMARY PHONE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| ADDRESS | | | | | | | | PHONE #2 |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| DOB | AGE | SEX | RACE | HEIGHT or RANGE | WEIGHT or RANGE | EYES | HAIR | RESIDENT STATUS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| DL NUMBER/STATE | SSN | ALIAS (LAST, FIRST, MIDDLE) | |
|---|---|---|---|
| | | | |

| EMPLOYER NAME AND ADDRESS |
|---|
| |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Hernandez, Jonathan | 11/22/2023 | |

DISC-00012



# PINELLAS PARK POLICE DEPARTMENT
## CASE SUPPLEMENT REPORT
### 7700 59th ST N
### Pinellas Park, FL 33781

CASE # **2023-00071129**

## NARRATIVE

*************************SUPPLEMENT************************

ORIGINAL REPORT TYPE/ Weapons offense

ORGINAL REPORT OFFICER/ SGT. Haisch

REPORT DATE/ 11-22-23

SUPPLEMENT OFFICER/ Officer J. Hernandez #609

SUPPLEMENT DATE/ 11-23-23

On 11-23-23 at approximately 1857 hrs, I attempted to call Quontesha and Rodolfo Johnson, who were the victims in a call involving the Trout. The Johnsons were left voicemails requesting their assistance in our investigation against Trout. I also called the gym Trout frequents, MJM Sityodtong Gym, at 727-289-7296 and left a voicemail for the owner requesting the same assistance from them. The gym is located at 13584 49th St. N suite B. This report will be supplemented when further information is obtained.

NFI

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| Hernandez, Jonathan | 11/22/2023 | |

Case Supplement Report 2023-00071129 Page 2 OF 2

DISC-00013

# VIPARS

UCN: 522023CF011307XXXXCF     FL0521100

## COMPLAINT/ARREST AFFIDAVIT – CIRCUIT/COUNTY COURT – PINELLAS COUNTY, FLORIDA

| OBTS # | REPORT # 2023-71129 | DOCKET # 1948207 |
|---|---|---|

| Person ID 311858151 | SSN# |
|---|---|

Charge Description [X] Felony [ ] Misdemeanor [ ] Warrant [ ] Traffic [ ] Ordinance    Traffic Citation # (if any)    Court Case #

**Charge**
THREATS OF MASS SHOOTING      23-11307-CF-1

| Defendant's Name (Last, First, Middle) | DOB | Sex | Race | Ht | Wt | Hair | Eyes | Skin |
|---|---|---|---|---|---|---|---|---|
| TROUT III, ROBERT JACOB | | M | B | 507 | 125 | BLK | BRO | MED |

| Alias | DL # | State FL | Scars/Marks/Tattoos/Physical Features |
|---|---|---|---|

| Local Address (Street, City, State, Zip Code) | Telephone | Place of Birth | Citizenship |
|---|---|---|---|
| PINELLAS PARK FL 33781 | 646-703-4160 | MI | US |

| Permanent Address (Street, City, State, Zip Code) | Telephone | Employed by / School |
|---|---|---|
| PINELLAS PARK FL 33781 | 646-703-4160 | UNEMPLOYED |

| Weapon Seized  Type | Indication of | Y N UNK | Indication of Mental | Y N UNK | Indication of | Y N UNK |
|---|---|---|---|---|---|---|
| [ ] Yes [X] No  MULTIPLE PISTOL | Drug Influence [ ] [X] [ ] | | Health Issues [ ] [X] [ ] | | Alcohol Influence [ ] [X] [ ] | |

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody [ ] Yes [ ] No |
|---|---|---|---|---|
| | | | | [ ] Felony [ ] Misdemeanor |

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody [ ] Yes [ ] No |
|---|---|---|---|---|
| | | | | [ ] Felony [ ] Misdemeanor |

The undersigned swears that he/she has reasonable grounds to believe that the above named defendant on the **22** day of **NOVEMBER**, **2023**,

at approximately **1:00**   **PM**, at **3205 GRAND AVE PINELLAS PARK FL**, in Pinellas County did:

THREAT OF MASS SHOOTING / ACT OF TERRORISM

DID SEND, POST, OR TRANSMIT, OR PROCURE THE SENDING, POSTING, OR TRANSMISSION OF SOCIAL MEDIA POSTING (VIDEO) OF DEFENDANT HANDLING FIREARMS IN A RECKLESS MANNER STATING "I'M GONNA SHOOT ANYBODY I SEE ON THAT FUCKIN TRAIN", "IF YOUR FROM NEW YORK CITY DO NOT TAKE THE TRAIN ON THURSDAY EVENING"; TO INSTAGRAM SOCIAL MEDIA VIEWED BY MANY PERSON(S) IN A MANNER IN WHICH IT MAY BE VIEWED BY ANOTHER PERSON CONTAINING A THREAT TO CONDUCT A MASS SHOOTING OR AN ACT OF TERRORISM.

TO WIT: ON 11/22/23 A CONFIDENTIAL COMPLAINANT ADVISED A SUBJECT THEY KNEW THROUGH "INSTAGRAM" USING THE ID HANDLE @LIVE4_R3ROK_DIE4_R3ROK POSTED A VIDEO (WHICH WAS CAPTURED AND OBSERVED BY YOUR AFFIANT) MAKING THREATS OF A MASS SHOOTING IN NEW YORK CITY, NY.  THE DEFENDANT HAD TWO GLOCK .40 CALIBER PISTOLS WHICH WE BRANDISHED IN A RECKLESS MANNER AND WERE WITH TWO EXTENDED AMMUNITION MAGAZINES.  VISIBLE AMMUNITION IS OBSERVED WHILE THE DEFENDANT IS MAKING THE VIDEO.  THE DEFENDANT WAS IDENTIFIED BY MULTIPLE SOURCES TO INCLUDE HIS MOTHER.  THE DEFENDANT THREATEN TO KILL ATLEAST 60 (SIXTY) PASSENGERS ON NEW YORK MASS TRANSIT THE SUBWAY.  THE DEFENDANT STATED HE HAD 60 ROUNDS OF AMMUNITION TO KILL 60 PEOPLE.

TWO GLOCK STYLE LOWER RECIEVER MANUFACTURING MOLDS WERE FOUND IN THE TRUCK OF THE VEHICLE IN WHICH THE DEFENDANT WAS DRIVING ON 11/22/23.  (THESE LOWER RECIEVERS ARE COMMONLY USED IN PLACE OF MANUFACTURED GLOCK LOWER RECIEVERS AS THEY LACK THE REQUIRED TRANSFERABLE INFORMATION/SERIAL NUMBER.  THE DEFENDANT DOES HAVE TIES TO NEW WORK AND IS EXPECTED BY FAMILY TO BE MOVING BACK TO NEW YORK.

Contrary to Florida Statute/Ordinance **836.10 - F2**.

ARREST DATE: **11/22/2023**   Time **7:51 PM**. Aggravating/Mitigating Factors **AO REQUEST NO BOND**

Booking Officer: **GRIEVES, A 57622**   Amount of Bond **20,000**   Bond Out Date _____ Time _____ [ ] a.m. [ ] p.m.

Victim Notified of Advisory?   Yes   No   Injuries to Victim?   Yes   No   Medical Treatment to Victim?   [ ] Yes [ ] No

The Court reviewed this complaint and finds there: [ ] is probable cause [ ] is not probable cause to detain defendant [ ] Bond Action, if any: _____

The probable cause determination is passed for: [ ] 24 Hrs [ ] 24 Hrs on showing of extraordinary circumstances   Received by Booking: 11/22/2023 10:33:24 PM

| Pursuant to F.S. 92.525 and under penalty of perjury, I declare that I have read the foregoing document and that the facts in it are true. | REQUEST FOR INVESTIGATIVE COSTS, F.S. 938.27(1) | | | |
|---|---|---|---|---|
| *[signature]* 531 | DATE 11/2023 | OFFICER SGT. HAISCH | HOURS X PAY RATE 8     25.00 | OR | COST $200.00 |
| PINELLAS PARK POLICE | | | | |
| **Declarant Signature**    **Agency** | OTHER – Describe _____ | | | |
| SERGEANT JESSE HAISCH 531    03329048 | Continuation sheet [ ] Yes [ ] No | | TOTAL $ $200.00 | |
| **Printed Name**    **Declarant ID#** | | | | |

COCR59 (Revised 10/2014)
1066736   Copies to:

**State Attorney**

## VICTIM NOTIFICATION INFORMATION

Defendant's Name  TROUT III, ROBERT JACOB _____ Court Case # 23-11307-CF-1 _____

1. Victim's Name  STATE OF FLORIDA _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

2. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

3. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

4. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

**COCR59 (Revised 02/2014)**

UCN: 522023OC006081XXXXOC  FL0521100

## COMPLAINT/ARREST AFFIDAVIT – CIRCUIT/COUNTY COURT – PINELLAS COUNTY, FLORIDA

| OBTS # | | REPORT # 1011744_TP | | DOCKET # 1948207 |
|---|---|---|---|---|

**Person ID** 311858151   **SSN#**

| Charge Description  ☒ Felony  ☐ Misdemeanor  ☐ Warrant  ☐ Traffic  ☐ Ordinance | Traffic Citation # (if any) | Court Case # |
|---|---|---|

**Charge**
FEDERAL INTERSTATE TERRORISTIC THREATS VIOLATION

23-06081-OC-CF-1

| Defendant's Name (Last, First, Middle) | DOB | Sex | Race | Ht | Wt | Hair | Eyes | Skin |
|---|---|---|---|---|---|---|---|---|
| TROUT III, ROBERT JACOB | | M | B | 507 | 125 | BLK | BRO | MED |

| Alias | DL # | State FL | Scars/Marks/Tattoos/Physical Features |
|---|---|---|---|

| Local Address (Street, City, State, Zip Code) PINELLAS PARK FL 33781 | Telephone 646-703-4160 | Place of Birth MI | Citizenship US |
|---|---|---|---|

| Permanent Address (Street, City, State, Zip Code) PINELLAS PARK FL 33781 | Telephone 646-703-4160 | Employed by / School UNEMPLOYED |
|---|---|---|

| Weapon Seized  Type ☐ Yes  ☒ No  MULTIPLE PISTOL | Indication of Drug Influence  Y ☐ N ☒ UNK ☐ | Indication of Mental Health Issues  Y ☐ N ☒ UNK ☐ | Indication of Alcohol Influence  Y ☐ N ☒ UNK ☐ |
|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody  ☐ Yes  ☐ No  ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|
| | | | | |

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody  ☐ Yes  ☐ No  ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|
| | | | | |

The undersigned swears that he/she has reasonable grounds to believe that the above named defendant on the **22** day of **NOVEMBER**, **2023**,

at approximately **1:00  PM**, at **3205 GRAND AVE PINELLAS PARK FL** , in Pinellas County did:

COURTESY HOLD FOR THE FEDERAL BUREAU OF INVESTIGATION

WILL PICK UP ON 11/24/2023 BY 1200 HOURS ANY QUESTIONS CONTACT SPECIAL AGENT D. NOWAK 727-348-8045

Contrary to Florida Statute/Ordinance **999.99**.

ARREST DATE: **11/22/2023**  Time **9:56 PM** . Aggravating/Mitigating Factors

Booking Officer: **GRIEVES, A 57622**  Amount of Bond **ZERO**  Bond Out Date  Time  ☐ a.m. ☐ p.m.

Victim Notified of Advisory?  Yes  No  Injuries to Victim?  Yes  No  Medical Treatment to Victim?  ☐ Yes ☐ No

The Court reviewed this complaint and finds there: ☐ is probable cause ☐ is not probable cause to detain defendant ☐ Bond Action, if any:

The probable cause determination is passed for: ☐ 24 Hrs ☐ 24 Hrs on showing of extraordinary circumstances   Received by Booking: 11/22/2023 10:34:45 PM

| Pursuant to F.S. 92.525 and under penalty of perjury, I declare that I have read the foregoing document and that the facts in it are true. | REQUEST FOR INVESTIGATIVE COSTS, F.S. 938.27(1) | | | | |
|---|---|---|---|---|---|
| | DATE 11/22/2023 | OFFICER J. HAISCH | HOURS X PAY RATE 3.0  25.00 | OR | COST $75.00 |
| *[signature]*  PINELLAS PARK POLICE | | | | | |
| **Declarant Signature**  Agency | | | | | |
| LIEUTENANT CHRISTOPHER RYAN 156  03154578 | OTHER – Describe | | | | |
| **Printed Name**  Declarant ID# | Continuation sheet ☐ Yes ☐ No | | | TOTAL $ $75.00 | |

COCR59 (Revised 10/2014)
1066757  Copies to:

State Attorney

# VICTIM NOTIFICATION INFORMATION

Defendant's Name **TROUT III, ROBERT JACOB** _____ Court Case # **23-06081-OC-CF-1** _____

1. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email _____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

2. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email _____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

3. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email _____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

4. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email _____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

**COCR59 (Revised 02/2014)**

UCN: 522023CF011307XXXXCF FL0521100

**COMPLAINT/ARREST AFFIDAVIT – CIRCUIT/COUNTY COURT – PINELLAS COUNTY, FLORIDA**

| OBTS # | | REPORT # 2023-71129 | | DOCKET # 1948207 |
|---|---|---|---|---|

| Person ID 311858151 | | SSN# | |
|---|---|---|---|

| Charge Description ☒ Felony ☐ Misdemeanor ☐ Warrant ☐ Traffic ☐ Ordinance | Traffic Citation # (if any) | Court Case # |
|---|---|---|

| Charge UNLAWFUL USE OF TWO-WAY COMMUNICATIONS DEVICE | 23-11307-CF-2 |
|---|---|

| Defendant's Name (Last, First, Middle) TROUT III, ROBERT JACOB | DOB | Sex M | Race B | Ht 507 | Wt 125 | Hair BLK | Eyes BRO | Skin MED |
|---|---|---|---|---|---|---|---|---|

| Alias | DL # | State FL | Scars/Marks/Tattoos/Physical Features |
|---|---|---|---|

| Local Address (Street, City, State, Zip Code) PINELLAS PARK FL 33781 | Telephone 646-703-4160 | Place of Birth MI | Citizenship US |
|---|---|---|---|

| Permanent Address (Street, City, State, Zip Code) PINELLAS PARK FL 33781 | Telephone 646-703-4160 | Employed by / School UNEMPLOYED |
|---|---|---|

| Weapon Seized Type ☐ Yes ☒ No  MULTIPLE PISTOL | Indication of Drug Influence ☐ Y ☒ N ☐ UNK | Indication of Mental Health Issues ☐ Y ☒ N ☐ UNK | Indication of Alcohol Influence ☐ Y ☒ N ☐ UNK |
|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody ☐ Yes ☐ No  ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody ☐ Yes ☐ No  ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|

The undersigned swears that he/she has reasonable grounds to believe that the above named defendant on the **22** day of **NOVEMBER**, **2023**,

at approximately **1:00 PM**, at **3205 GRAND AVE PINELLAS PARK FL** , in Pinellas County did:

DID USE A TWO-WAY COMMUNICATION DEVICE TO FACILITATE OR FURTHER THE COMMISSION OF A FELONY OFFENSE, TO-WIT: DEFENDANT UTILIZED HIS APPLE IPHONE TO MAKE MASS THREATS ON SOCIAL MEDIA IN REGARDS TO A MASS SHOOTING.

ON THE LISTED DATE THE DEFENDANT WAS FOUND IN POSSESSION OF HIS APPLE IPHONE. PRIOR TO POLICE CONTACT THE DEFENDANT UTILIZED HIS MOBILE DEVICE TO UPLOAD A VIDEO ON "INSTAGRAM" STATING THAT HE WAS GOING TO KILL AT LEAST SIXTY PEOPLE. THE DEFENDANT BRANDISHED MULTIPLE FIREARMS IN THE VIDEO POSTING ALONG WITH MAGAZINES. THE DEFENDANT MADE SPECIFIC THREATS ON HOW HE WOULD CARRY OUT THE ATTACKS TO INCLUDE DATE/TIME/LOCATION.

Contrary to Florida Statute/Ordinance **934.215 - F3** .

ARREST DATE: **11/22/2023** Time **7:51 PM** . Aggravating/Mitigating Factors **AO REQUEST NO BOND**

Booking Officer: **GRIEVES, A 57622** Amount of Bond **5,000** Bond Out Date Time ☐ a.m. ☐ p.m.

Victim Notified of Advisory? Yes No  Injuries to Victim? Yes No  Medical Treatment to Victim? ☐ Yes ☐ No

The Court reviewed this complaint and finds there: ☐ is probable cause ☐ is not probable cause to detain defendant ☐ Bond Action, if any: _____

The probable cause determination is passed for: ☐ 24 Hrs ☐ 24 Hrs on showing of extraordinary circumstances   Received by Booking: 11/22/2023 10:35:06 PM

| Pursuant to F.S. 92.525 and under penalty of perjury, I declare that I have read the foregoing document and that the facts in it are true. | REQUEST FOR INVESTIGATIVE COSTS, F.S. 938.27(1) | | | | |
|---|---|---|---|---|---|
| *[signature]* 531 | DATE 11/22/2023 | OFFICER SGT. HAISCH | HOURS X PAY RATE 8  25.00 | OR | COST |
| PINELLAS PARK POLICE | | | | | |
| Declarant Signature    Agency | | | | | |
| SERGEANT JESSE HAISCH 531    03329048 | OTHER – Describe | | | | |
| Printed Name    Declarant ID# | Continuation sheet ☐ Yes ☐ No | | | TOTAL $ $0.00 | |

COCR59 (Revised 10/2014)
1066760   Copies to:

**State Attorney**

DISC-00018

# VICTIM NOTIFICATION INFORMATION

Defendant's Name  TROUT III, ROBERT JACOB _____  Court Case # 23-11307-CF-2 _____

1. Victim's Name  STATE OF FLORIDA _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

2. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

3. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

4. Victim's Name _____ Race _____ Sex _____ DOB _____
   Social Security # _____ Party ID _____ Person ID _____
   Address _____
   City _____ State _____ Zip _____
   Home Telephone-Work Telephone _____ Email_____
   Other Contact Telephone _____
   (Cell Phone, Relative, Neighbor)
   Other Address for Victim _____
   Is Victim Confidential? ☐   Is the Victim a Witness? ☐   Was the Victims Rights Brochure Given? ☐   Is the Victim in a Hospital? ☐
   Name of Hospital? _____

**COCR59 (Revised 02/2014)**

February 26th, 2024

Case No: 8:23-mj-02468-JSS

Dear Judge Virginia Covington,

I hope this letter finds you in good health. I am writing to offer a character reference for my son, Robert Jacob Trout III, who is currently involved in case number 8:23-mj-02468-JSS.

Robert possesses a range of admirable qualities that are essential for your consideration. He is known for his kindness, always willing to lend a helping hand to those in need. I can attest to the fact that he has never been one to inflict harm on others intentionally.

Empathy is a defining trait in Robert. He has a unique ability to understand and share the feelings of others, which makes him a compassionate and considerate individual. His generosity and humility shine through in various aspects of his life, consistently putting the needs of others before his own.

Moreover, Robert is a person of unwavering loyalty, honesty, and courage. His loyalty to family and friends is remarkable, and he approaches life with a strong sense of integrity. His honesty is evident in his interactions with others, and he faces challenges with courage and determination.

I believe that Robert has the capacity for positive growth and rehabilitation. His commitment to embodying these virtues can serve as a foundation for his reintegration into society.

I am hopeful that, given the chance, Robert can continue to contribute positively to our community. I appreciate your time and consideration in this matter.

Sincerely

Natalie Trout

Anya Singh
77-14 113th Street
Apt C
Forest Hills, NY 11375
347-255-0556

February 19, 2024

To the Honorable Judge Virginia Covington,

My name is Anya Singh, and I am the Christian Education Director at New Beginnings Assembly of God. I have known Robert Jacob Trout III for twenty years. His family attended and were members of the church. Until they relocated to Florida. Robert Jacob Trout III has always been a loving and caring person.
That is why I am writing this letter to defend him because he has always been a respectful person and a genuine individual to everyone he has come across.

As a young boy, he would compete in many Bible Competitions. Apart from that, he has often participated in yearly community church events and fundraisers.

It is unfortunate that he is in this situation. I know that Robert Jacob Trout III is sorry.

I hope this letter convinces the court that he is a good person.

Yours truly,

Anya Singh

February 26, 2024

Re: Character Reference for Robert Jacob Trout III (Case Number: 8:23-mj-02468-JSS)

Dear Judge Covington,

I trust this letter finds you in good health and high spirits. I am writing to provide a character reference for my nephew, Robert Jacob Trout III, who is currently before your court with the case number mentioned above.

Our family has known Jacob his entire life, and we have witnessed his growth and development under the guidance of his God-fearing parents and extended family. Coming from a culturally diverse background that combines African American and Guyanese influences, Jacob has had the privilege of gaining exposure to various perspectives and experiences.

Despite being only a few credits away from completing his high school graduation requirements, Jacob is poised for a promising future. He is considering various paths, including vocational training, university programs, and military service. The outcome of this court case will significantly impact Jacob's journey into adulthood.

One aspect that speaks volumes about Jacob's character is his unwavering devotion to his father, who battles multiple sclerosis and dementia. Jacob, despite his young age, has shouldered the responsibilities of caregiving and support, especially given the challenges posed by his father's debilitating conditions.

In light of these circumstances, we kindly request the court's compassion and consideration when making a ruling that will shape Jacob's future. We understand the complexities of your position and appreciate the difficulty of the decisions you must make.

Thank you for taking the time to review this character reference and for your dedication to the pursuit of justice. Your thoughtful consideration is immensely appreciated.


Sincerely,

John and Barbria Bacon

December 4, 2023

To Whom It May Concern,

I have known Robert Trout III since 2018 when he was a student at Richmond Hill High School in Queens, NY. I provided weekly counseling to Robert as part of his special education Individualized Education Plan. He transferred to our school from an accelerated middle school program where he was bullied. Robert was unsettled and sensitive, had a desire to fit in but wasn't often accepted and sought to become a productive member of society yet struggled to find his place. Robert was diagnosed with ADHD and

His mother Natalie took a very active role in his education, discipline and overall development. Robert left our school to attend a program for students with emotional disabilities. He then moved to FL with his mother for an opportunity to start over. She has stayed in touch with me over the years always providing updates on Robert. Last month she reached out to say that Robert had finished high school, was working and had found a positive outlet and discipline in Muay Thai.

I am startled by this most recent update. I hope that Robert is given the chance to explain and rehabilitate as prison would only serve to isolate him and aggravate wounds that need healing.

Thank you for your consideration.

Aparna Tambar, LMSW

2/18/24

To whom it may concern.

Re: Robert Jacob Trout

I have known Jacob for over twelve years.

Our relationship began when Jacob'was six and his mom brought him to me for some additional educational help during his summer vacation. That continued, with me offering homework help in the evenings until  Junior High School.

During all of those years, I found Jacob to be honest and eager to learn, He was enthusiastic about  educational goals and he was very excited when his grades were high. His success at one level highly motivated him to go to the next. Jacob was an obedient child and  loved to compete in order to  be a high achiever.

While we were together, I found Jacob to be cooperative, very conversational, respectful  and fun loving as well.

I do  wish him sll the best.


Sincerely

Daphne Singh

*Daphne Singh*



**MJM SITYODTONG CLEARWATER**
**MJM MUAY THAI LLC**
**13584 49th ST N. Suite 8**

---

**To whom it may concern,**
**Robert Trout is a student at our Martial Arts school in Clearwater Florida. We all find him to be an outstanding individual. He is very kind and thoughtful to others, and always asking and willing to help out. He normally trains with us twice per day. Robert is a very hard worker and always trying to motivate others around him. He does likes to act like the class clown and jokester time to time. But he's harmless. We do not find Robert to be a threat to anyone. He has a huge heart and wears his heart on his sleeve.**

Best Regards,
Matthew J McCusker
Co Owner
Head Coach



**NEW BEGINNINGS AOG**
105-01107th  Avenue
Queens, NY 11419

February 16, 2024

To Judge **Virginia Covington,**

I have known Robert Jacob Trout Ill since early childhood in Sunday School and other Church activities, as I was his Pastor for many years before he and his family relocated to Florida. Robert consistently demonstrated a remarkable depth of understanding and reverence for biblical teachings. His active involvement in the Bible Quiz competition not only showcased his knowledge but also exemplified his commitment to delving into the scriptures with diligence and passion.

Beyond his academic achievements, Robert embodies the qualities of compassion and kindness from a young age. His genuine concern for others and willingness to offer assistance reflected his sense of empathy and goodwill. Robert's actions consistently mirrored the teachings of love and compassion. Robert's decision to be baptized at the young age of 10 stands as a testament that his faith was not merely a set of beliefs, but a guiding force that influenced every aspect of his life. As Robert transitioned into adolescence, his commitment to sharing his faith remained. He approached life's challenges with a boldness and determination rooted in his trust in God's good works.

Robert Jacob Trout Ill's character is defined by his unwavering faith, genuine compassion, and commitment to embodying the principles of love, service, and humility. I hope this letter stands as a testament for his character.

Sincerely,

**NEW BEGINNINGS**
**A  r:MBLY OF GOD**

*Rambard Singh*

**Rev. Rambarak Singh**
**Senior  Pastor,  New  Beginnings  AOG**